IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAISYVETTE ACEVEDO        :        CIVIL ACTION
                      :
     v.                 :
                      :
ANDREW M. SAUL,[1]        :
Commissioner of Social Security     :
Administration             :        NO.  19-2310

**MEMORANDUM OF DECISION**

THOMAS J. RUETER
United States Magistrate Judge              January 10, 2020

        Plaintiff, Daisyvette Acevedo, filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act").

        Plaintiff filed a Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br."), defendant filed a Response to Plaintiff's Request for Review ("Def.'s Br."), and plaintiff filed a reply thereto ("Pl.'s Reply").  Additionally, defendant filed a Motion to Stay (Doc. 15), to which plaintiff filed a response in opposition (Doc. 16).  For the reasons set forth below, the plaintiff's Request for Review will be **GRANTED** to the extent that the case will be remanded for further proceedings, and the Motion to Stay will be **DENIED**.

## I.    FACTUAL AND PROCEDURAL HISTORY

        Plaintiff filed an application for SSI on October 30, 2015, alleging disability beginning September 30, 2008.  (R. 157-68.)  Plaintiff's claim was denied initially; she then filed

---

[1]     On June 4, 2019, Andrew M. Saul became the Commissioner of the Social Security Administration.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted as the defendant in this case.

a request for a hearing.  (R. 70-89, 93-95.)  A hearing was held on January 18, 2018, before

Administrative Law Judge ("ALJ") Brian Battles.  (R. 37-69.)  Plaintiff, represented by counsel,

appeared and testified.  A vocational expert ("VE") was available to testify at the administrative

hearing by telephone, but the ALJ did not seek her testimony at that time.  Instead, the ALJ

obtained responses to written interrogatories from the VE and from a medical expert ("ME")

subsequent to the hearing.  See R. 270-91, 1024-28.

In a decision dated June 26, 2018, the ALJ found that plaintiff was not disabled

under the Act.  (R. 12-31.)  The ALJ made the following findings:

1.  The claimant has not engaged in substantial gainful activity since October 22, 2015, the application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairments: hidradenitis suppurativa; migraines; depression; anxiety; bipolar disorder; and scoliosis (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that she could occasionally balance, stoop, kneel, crouch and crawl and occasionally climb ramps and stairs.  The claimant cannot climb ladders, ropes, or scaffolds.  The claimant cannot work in hazardous environments such as unprotected heights or around dangerous machinery and open flames.  The claimant can tolerate occasional contact with supervisors, coworkers, and the public.  The claimant can perform unskilled, simple, routine, repetitive tasks and can work in a low stress job, defined as only making occasional decisions, and tolerating only occasional changes in the work setting.  Finally, the individual would need to be in a position that would allow her to stand for 5 minutes after sitting for 30 minutes, in addition to normal breaks, throughout the workday while remaining at the workstation to alleviate pain and discomfort.

5.  The claimant has no past relevant work (20 CFR 416.965).

6.      The claimant was born on September 15, 1985, and was 30 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7.      The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.      Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since October 22, 2015, the date the application was filed (20 CFR 416.920(g)).

(R. 15-31.)

Plaintiff filed a request for review of the ALJ's decision that was denied and the ALJ's decision became the final decision of the Commissioner.  (R. 1-8, 153-56.)  Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II.      STANDARD OF REVIEW

The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's decision.  Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (citing 42 U.S.C. § 405(g)), cert. denied, 571 U.S. 1204 (2014); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence.  Jesurum v. Sec'y of U.S. Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995).  This court may not weigh

evidence or substitute its conclusions for those of the fact-finder. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)). As the Third Circuit has stated, "so long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings." Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).

To be eligible for benefits, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Specifically, the impairments must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment. 42 U.S.C. § 1382c(a)(3)(H)(i).

The Social Security Administration employs a five-part procedure to determine whether an individual has met this burden. 20 C.F.R. § 416.920.[2] This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience. See id. The claimant bears the burden of establishing steps one through four of the five-step evaluation process, while

---

[2] For purposes of this opinion, the court will refer to the version of the relevant regulation in effect at the time of the ALJ's decision on June 26, 2018.

the burden shifts to the Commissioner at step five to show that the claimant is capable of performing other jobs existing in large numbers in the national economy. <u>Hess v. Comm'r of Soc. Sec.</u>, 931 F.3d 198, 201 (3d Cir. 2019).

## III.    BACKGROUND

At the time of the January 18, 2018 administrative hearing, plaintiff was thirty-two years old and lived with her fourteen-year-old daughter in a two-story home. (R. 45-46.) Plaintiff has a driver's license and estimated that she drives once per week, either to a doctor's appointment or to pick up her daughter. (R. 47.) With respect to her education, plaintiff stated that she is a high school graduate and also obtained a certification in medical billing. (R. 47-48.)

Plaintiff's counsel explained that plaintiff has hidradenitis suppurativa ("HS"), which results in skin lesions on her back, arms, face, hips, and groin. (R. 44.)[3] Plaintiff's counsel noted that HS is a listed condition and asserted that plaintiff meets the requirements of Listing 8.06.[4] <u>Id.</u>

---

[3]    HS is "a chronic suppurative disease of skin that bears apocrine sweat glands, chiefly in the axillae or anogenital region, caused by occlusion of pores with secondary bacterial infection of the glands. Tender red abscesses develop, enlarge, and eventually break through the skin, yielding purulent or seropurulent drainage. When lesions heal, fibrosis remains, and recurrences lead to sinus tract formation and scarring." <u>Dorland's Illustrated Medical Dictionary</u>, 32nd ed. (2012) at 859.
    Plaintiff stated that HS causes cysts on a weekly basis. (R. 57.) Plaintiff has been treated with gauze, antibiotics, and pain medication. <u>Id.</u> In addition, plaintiff has had four surgeries to remove the cysts, and had such surgery one week prior to the administrative hearing. (R. 58-59.) The cysts have occurred on her armpit, stomach, and groin area. (R. 59.) In response to questioning by the ALJ, plaintiff indicated that she has difficulty going up and down the stairs when she has a flare-up of her skin condition, due to the painful, burning sensation caused by the lesions. (R. 46.)

[4]    Listing 8.00 deals with skin disorders. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 8.00. Specifically, Listing 8.06 provides: "Hidradenitis suppurativa, with extensive skin lesions involving both axillae, both inguinal areas or the perineum that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 8.06. "Extensive skin lesions" are defined as:

When asked to explain why she is unable to work, plaintiff testified that she cannot work due to pain from her skin condition. (R. 52-53.) Plaintiff also stated that her skin condition causes her to feel depressed and tired, and that the pain causes problems with walking and dressing, to the extent that she is unable to put on underwear or shoes. (R. 53.)[5] Plaintiff stated that the pain is so severe that she is unable to report to work. Id. In response to the ALJ's question, plaintiff confirmed that absenteeism is the reason that she has had numerous jobs, each of a short duration. (R. 53-54.) She is unable to maintain employment on a continuous and sustaining basis. Id. In addition, plaintiff confirmed that her physical impairments affect her mental state. (R. 54.) Plaintiff lacks motivation to accomplish her daily chores when she is suffering from a painful flare-up. Id. Plaintiff also explained that HS causes her to feel self-conscious and uncomfortable around other people. (R. 55-56.) For example, she participates in parent/teacher conferences over the phone rather than attending the meeting at school. (R. 55.) In addition, the physical pain of HS causes difficulty with concentration and affects her ability to sleep. (R. 56, 62.) Although she has suffered from HS since 2008, the condition has worsened over the years. (R. 55.)

---

those that involve multiple body sites or critical body areas, and result in a very serious limitation. Examples of extensive skin lesions that result in a very serious limitation include but are not limited to:

    a.    Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.

    b.    Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.

    c.    Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 8.00.

[5]    Upon further questioning by the ALJ, plaintiff clarified that when she has a flare-up, pain is caused by any type of movement, not only when going up and down stairs. (R. 63-64.)

With respect to her work history, plaintiff's past work includes employment as a home care aide, a warehouse worker, and a telephone customer service agent. (R. 50-51.) Plaintiff initially testified that she last worked in 2012, but acknowledged that she had earnings of approximately $2,000 in 2015 and $221 in 2016. (R. 48.) Plaintiff explained that she has attempted to work as a janitor and as a home care aide, but has been unable to maintain employment due to her skin condition. (R. 50.) The ALJ noted that while plaintiff's work history reflects numerous employers, each job was held for a short duration. (R. 51.) As a result, the ALJ determined that plaintiff's work history did not constitute past relevant work under Social Security parameters. (R. 52.)

The ALJ advised the VE that he would not take the VE's testimony at that time, but that he would likely send post-hearing interrogatories for her consideration and response, because he needed more time to comprise a hypothetical question. (R. 64.) The ALJ also indicated that he would likely pose interrogatories to an ME. (R. 65-68.) After announcing that the record would be kept open for the submission of additional medical records pertaining to plaintiff's most recent surgery, the ALJ adjourned the hearing. (R. 68.)

IV.    DISCUSSION

The ALJ found that the evidence of record supports a finding that plaintiff has severe impairments, but the impairments do not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15-17.) Ultimately, the ALJ concluded that plaintiff retains the residual functional capacity ("RFC") to perform a range of sedentary work as detailed in his decision. See R. 18. Plaintiff presently contends that substantial evidence does not support the ALJ's decision. Specifically, plaintiff argues that the ALJ erred in evaluating her physical and mental impairments. (Pl.'s Br. at 3-24; Pl.'s Reply at 1-6.) In

addition, relying on <u>Lucia v. S.E.C.</u>, 138 S. Ct. 2044 (2018), plaintiff contends that the case should be remanded to a different ALJ who has been constitutionally appointed. (Pl.'s Br. at 24-29; Pl.'s Reply at 6-9.) Defendant maintains that substantial evidence supports the decision of the ALJ and that the court should reject plaintiff's Appointments Clause claim because it was not presented to the SSA during the administrative process. (Def.'s Br. at 1-24.)

A. **Appointments Clause Challenge**

Plaintiff avers that the ALJ did not exercise lawful authority when plaintiff's claim was denied, because the ALJ was an inferior officer who was not properly appointed pursuant to the Appointments Clause of the United States Constitution. (Pl.'s Br. at 24-29; Pl.'s Reply at 6-9.) <u>See</u> U.S. Const., Art. II, § 2, cl. 2 (Congress may vest appointment of "inferior Officers … in the President alone, in the Courts of Law, or in the Heads of Departments."). In <u>Lucia</u>, the Supreme Court held that the Securities and Exchange Commission's ALJ was appointed in violation of the Appointments Clause because the ALJ was appointed by SEC staff members, not the SEC department head. 138 S. Ct. at 2055. The Court found that Lucia made a timely challenge to the constitutional validity of the ALJ's appointment and remanded for a hearing by either a properly appointed ALJ or the SEC itself. <u>Id.</u> Accordingly, plaintiff presently contends that this case should be remanded to a different ALJ who has been constitutionally appointed. (Pl.'s Br. at 29.) Defendant counters that plaintiff forfeited her Appointments Clause claim because she failed to assert this challenge during the administrative proceedings. (Def.'s Br. at 4-13.) <u>See</u> <u>Turner Bros., Inc. v. Conley</u>, 757 F. App'x 697, 700 (10th Cir. 2018) (not precedential) ("Appointments Clause challenges are nonjurisdictional and may be waived or forfeited.") (citing <u>Freytag v. Comm'r</u>, 501 U.S. 868, 878-79 (1991)).

To date, neither the United States Court of Appeals for the Third Circuit Court nor the Supreme Court has determined whether Lucia is applicable to Social Security ALJs and courts within this Circuit have diverged on this issue. Compare Marchant o/b/o A.A.H. v. Berryhill, 2019 WL 2268982 (E.D. Pa. May 28, 2019), Muhammad v. Berryhill, 381 F. Supp. 3d 462 (E.D. Pa. 2019), and Cox v. Berryhill, 2018 WL 7585561 (E.D. Pa. Dec. 18, 2018), with Culclasure v. Comm'r of the Soc. Sec. Admin., 375 F. Supp. 3d 559 (E.D. Pa. 2019), appeal filed, No. 19-2386 (3d Cir. June 17, 2019), Cirko v. Berryhill, 2019 WL 1014195 (M.D. Pa. Mar. 4, 2019), appeal filed, No. 19-1772 (3d Cir. Apr. 10, 2019), Bizarre v. Berryhill, 364 F. Supp. 3d 418 (M.D. Pa. 2019), appeal filed, No. 19-1773 (3d Cir. Apr. 17, 2019), and Perez v. Berryhill, No. 18-1907 (Doc. 15) (E.D. Pa. Jan. 7, 2019), Report and Recommendation adopted, (Doc. 22) (E.D. Pa. Apr. 23, 2019), appeal filed, No. 19-2428 (3d Cir. June 20, 2019). However, the issue currently is under review by the Third Circuit on a consolidated appeal.[6] Oral argument was heard on November 13, 2019.

Nevertheless, this court finds the reasoning of Marchant o/b/o A.A.H. v. Berryhill, 2019 WL 2268982 (E.D. Pa. May 28, 2019) (Kelly, J.) and Muhammad v. Berryhill, 381 F. Supp. 3d 462 (E.D. Pa. 2019) (Pappert, J.), to be persuasive on the Appointments Clause issue. As such, plaintiff has forfeited her right to challenge the constitutionality of the ALJ's appointment by failing to timely assert this issue during the administrative process. Remand on this issue is not warranted.

---

[6] Notices of appeal were also filed in several Eastern District of Pennsylvania cases. See, e.g., Wilson v. Comm'r, No. 19-2639; Ready v. Comm'r, No. 19-2519; Rodriguez v. Comm'r, No. 19-2501; Perez v. Comm'r, No. 19-2428; Culclasure v. Comm'r, No. 19-2386.

**B.      Consideration of Evidence of HS**

Plaintiff contends that the ALJ committed a series of legal errors in evaluating the medical evidence related to HS and formulating plaintiff's RFC.  (Pl.'s Br. at 3-15.)  RFC refers to the most a claimant can do despite her limitations.  20 C.F.R. § 416.945(a)(1).  The RFC assessment must be based upon all relevant evidence, including medical records, medical source opinions, and a claimant's description of her own symptoms.  The final responsibility for determining a claimant's RFC is reserved exclusively for the Commissioner, who will not give any special significance to the source of another opinion on this issue.  20 C.F.R. § 416.927(d)(3).[7]

Pursuant to the regulations in effect at the time of the ALJ's decision, an ALJ must give medical opinions the weight he deems appropriate based on factors such as whether the physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the record as a whole. See 20 C.F.R. § 416.927.  An ALJ shall "accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (internal citations omitted).  The regulations provide that an ALJ shall give a treating physician's opinion controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and it is not "inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(c)(2).  If the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason.  Morales, 225

---

[7]      The court notes that 20 C.F.R. § 416.927 applies because plaintiff's claim was filed before March 27, 2017.

F.3d at 317 (citing <u>Plummer</u>, 186 F.3d at 429).  That is, a treating source's opinion may be rejected "on the basis of contradictory medical evidence," <u>Plummer</u>, 186 F.3d at 429, or if it is unsupported by sufficient clinical data, <u>Newhouse v. Heckler</u>, 753 F.2d 283, 286 (3d Cir. 1985). An ALJ may not reject a treating physician's opinion based upon his own credibility judgments, speculation, or lay opinion.  <u>Morales</u>, 225 F.3d at 317.

Plaintiff contends that in analyzing her RFC, the ALJ failed to properly consider the opinion evidence, and other evidence, which establishes that plaintiff is unable to work due to pain during a flare-up of HS.  In particular, plaintiff contends that the ALJ failed to properly address the evidence of absenteeism, instead reasoning that a sedentary job which allows for sitting for eight hours a day, with a five-minute standing option every thirty minutes, accommodates plaintiff's functional limitations during an HS flare-up.  <u>Id.</u>  The court agrees that the ALJ's RFC analysis is not supported by substantial evidence.

When formulating plaintiff's RFC, the ALJ addressed the evidence of record pertaining to plaintiff's claims that she is unable to work due to various health issues, including HS.  In a detailed decision, the ALJ analyzed, <u>inter alia</u>, plaintiff's testimony; treatment records pertaining to plaintiff's physical and mental impairments; the February 2016 opinion of the State agency psychological consultant, Erin Urbanowiscz, Psy.D.; the February 8, 2016 opinion of psychiatric consultative examiner, Stephanie Adam, Psy.D.; the September 2013 opinion of plaintiff's treating physician which addressed a back impairment; an April 2014 opinion of Raghavendra R. Siragavarapu, M.D., pertaining to plaintiff's mental status and diagnoses; an October 2015 GAF score assessed during therapy; the December 2016 and January 2018 opinions of plaintiff's treating physician, Randolph Wojcik, Jr., M.D., who performed surgery on several HS lesions; the February 23, 2018 opinion of ME Jennifer Turkish which was provided

in response to the ALJ's interrogatories; and a Third Party Function Report completed by plaintiff's mother. (R. 18-29.) Plaintiff presently contends, however, that the opinion evidence supports her claim of greater limitations due to HS than acknowledged by the ALJ. That is, plaintiff avers that the opinion evidence demonstrates that plaintiff is unable to work during an HS flare-up due to severe pain, and that plaintiff has had numerous flare-ups during the relevant time period, but the ALJ failed to properly address the evidence that supports this contention.

In support of her argument, plaintiff points to evidence in the treatment records that document plaintiff's claim that she suffers from severe pain during an HS flare-up. For example, a March 24, 2015 progress note indicates that plaintiff called the office of her primary care doctor seeking an appointment for treatment of HS cysts on her buttocks; plaintiff also advised that she was not certain whether she would be able to attend the appointment because she could not drive due to the severity of the pain and the location of the cyst. (R. 463.) A subsequent progress note dated April 8, 2015, reflects that plaintiff sought an appointment due to the "unbearable" pain from the HS cyst on her buttock. (R. 465.) In addition, on June 25, 2015, plaintiff presented to the emergency department for treatment of an abscess on her abdomen that had been present for four days. (R. 388-89.) Other lesions were observed. Id. Plaintiff was to follow up with her surgeon and was instructed to refrain from working that day. (R. 389.)

On December 30, 2016, Dr. Wojcik evaluated plaintiff for HS in her groin area. (R. 784-87.) He prescribed antibiotics and Epsom salt soaks to allow the acute infection to subside; plaintiff was to return in two weeks. (R. 787.) Dr. Wojcik provided a "To whom it may concern" letter dated December 30, 2016, which reflects that plaintiff should be excused from work due to illness. (R. 803.) The letter reflects a time period of "12/29/16 through 12/12/16" [sic] with a return to work date of "12/13/16." Id. A January 3, 2017 treatment note indicates

that plaintiff sought treatment in the emergency department on December 31, 2016, for excision and drainage of the affected site. (R. 791.) Plaintiff was instructed to continue on the prescribed course of antibiotics and to follow-up with Dr. Wojcik in one week. (R. 794.) On January 13, 2017, plaintiff was again evaluated by Dr. Wojcik and scheduled for excision, which occurred in February 2017. (R. 797, 1006.) A September 14, 2017 treatment note from plaintiff's primary care physician, Brian Shablin, M.D., documents that plaintiff was "sitting uncomfortably in a chair leaning to her left" when she sought treatment for an HS lesion on her buttock. (R. 939-40.) She also was observed limping. (R. 940.) Plaintiff was prescribed ibuprofen and Vicoden for pain; it was noted that plaintiff was to see a rheumatologist and a dermatologist for the condition. (R. 942-43.) From December 2017 to January 2018, Dr. Wojcik again treated plaintiff for HS, including the performance of an excision of an HS cyst. See R. 1006-23.

In response to interrogatories supplied by the ALJ, Dr. Turkish opined that plaintiff has HS lesions "periodically" and that she "suffer[s] from pain during [a] flare-up," but that plaintiff's condition did not meet the durational requirements of Listing 8.06. (R. 1027.) With respect to plaintiff's functional limitations resulting from HS, Dr. Turkish opined that plaintiff has difficulty walking and sitting during a flare-up, but that she can "dress, bath[e] and shop." (R. 1028.)

In his decision, the ALJ stated the following with respect to Dr. Wojcik's opinions:

> Randolph Wojcik, Jr., M.D., opined in December 2016 the claimant was to be excused from work between December 12 and 29, 2016, but inconsistently noted she may return to work on December 13, 2016 with no restrictions (B13F/21, 24). His only explanation was that she had "self-reported an acute illness" (B13F/21, 24). In January 2017, he submitted a similar letter excused [sic] the claimant from work and again only explaining the claimant had "self-reported an acute illness" (B13F/27). In January 2018, after excision surgery, he limited her to lifting of 10 to 15 pounds (B18F/5). The undersigned gives these opinions little

weight because they are internally inconsistent and appear to be based on the claimant's subjective complaints. Moreover, they appear to be temporary and do not reflect the claimant's overall level of functioning.

(R. 28.)  In addition, with respect to Dr. Turkish's opinion, the ALJ attributed "some weight" to the opinion that HS causes "difficulty walking and sitting when flared up because she had [HS] of her buttocks."  Id.  However, the ALJ also noted that Dr. Turkish opined that plaintiff "could dress, bath, and shop."  Id.  The ALJ described the opinion as "somewhat vague as it does not provide limitations in vocationally relevant terms."  Id.  The ALJ reasoned that he "accommodated the claimant's difficulties walking, standing, and sitting by limiting her to a sedentary exertional capacity with a sit/stand option."  Id.

At the administrative hearing, the ALJ addressed the issue of absenteeism due to pain caused by HS or treatment for HS.  Plaintiff testified that when she has an HS flare-up, any type of movement causes pain such that she cannot work.  (R. 52-53, 63-64.)  She also indicated that the pain causes difficulty walking and dressing.  (R. 53.)  In response to the ALJ's question, plaintiff confirmed that she is unable to maintain employment on a continuous and sustaining basis due to absenteeism  (R. 53-54.)  The ALJ commented that, as a result, plaintiff's work history did not constitute past relevant work under Social Security parameters.  (R. 51-52.)  Furthermore, various treatment notes indicate that plaintiff was unable to work, albeit on a temporary basis, due to pain from, or treatment of, HS.  See, e.g., R. 388-89.  In addition, Dr. Wojcik's opinion, although confusing, clearly indicates that plaintiff cannot work for a period of time after surgery to remove HS lesions.  See R. 803, 808-09.  Moreover, the ME indicated that HS causes a temporary impairment due to difficulty walking and sitting, but that the impairment is not of "a consistent duration of time."  See R. 1027.  Furthermore, in the interrogatories posed to the VE, the ALJ queried the VE about the effect of absenteeism on the hypothetical

individual's ability to perform work.  See R. 287.  The VE was asked whether an individual with the RFC assessed by the ALJ could perform plaintiff's past jobs, if the individual were off-task up to twenty-five percent of the day, or would be absent more than three days per month.  Id. The VE indicated that such individual could not perform plaintiff's past jobs, indicating "no [past relevant work] existing."  Id.  In addition, the VE opined that such an individual could not perform any unskilled or skilled occupations that exist in the national economy.  (R. 288.)

This court is cognizant of the fact that there is "no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004) (not precedential), and that "[a]n ALJ may accept some of a medical source's opinions while rejecting other opinions from the same source." Comiskey v. Astrue, 2010 WL 308979, at *9 (E.D. Pa. Jan. 27, 2010) (citing Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202-04 (3d Cir. 2008)).  However, an ALJ may not "'pick and choose' among the evidence, selecting only that which supports his ultimate conclusions." Middlemas v. Astrue, 2009 WL 578406, at *9 (W.D. Pa. Mar. 5, 2009) (citing Morales, 225 F.3d at 318 (an ALJ may not simply rely on "the pieces of the examination reports that supported [his] determination," while excluding other evidence)).

Additionally, case law guides that an ALJ "may not reject pertinent or probative evidence without explanation." Johnson, 529 F.3d at 204.  The ALJ must provide not only an expression of the evidence he considered which supports the result, but also some indication of the evidence which was rejected.  Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).  "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."  Id.  See also Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000) ("Although the ALJ may weigh the credibility of the evidence, he

must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.").

As set forth <u>supra</u>, the medical records document plaintiff's allegations that she suffers from severe pain during an HS flare-up.  The opinion evidence also supports plaintiff's claim that she is unable to work, at least temporarily, when she has a flare-up.  However, the ALJ determined that a sit-stand option sufficiently accommodates plaintiff's pain during a flare-up and did not address the issue of absenteeism in his decision.  If the ALJ excluded such evidence from the RFC analysis for some reason, he failed to provide such a reason and erred in so doing.  While the ALJ was not required to adopt each restriction noted in the various opinions, the ALJ was required to evaluate the opinion evidence in accordance with the proper standards.  The substantial evidence test is not satisfied if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." <u>Kent v. Schweiker</u>, 710 F.2d 110, 114 (3d Cir. 1983).  <u>See also</u> <u>Nazario v. Comm'r Soc. Sec.</u>, 2019 WL 6170820, at *4 (3d Cir. Nov. 20, 2019) (not precedential) (same).[8]

Here, the ALJ failed to sufficiently address plaintiff's contention that she is unable to work during an HS flare-up due to severe pain, resulting in frequent absenteeism.  To be sure, the court does not suggest that the ALJ should be bound by plaintiff's calculation of the amount of time that plaintiff would be absent from work due to HS flare-ups.  <u>See</u> Pl.'s Br. at 9-10.  However, it is unclear whether the ALJ properly considered the evidence of absenteeism, and the opinion evidence related to this issue in the context of the RFC analysis, determining instead that a sit-stand option sufficiently accommodates plaintiff's pain.

---

[8]     Additionally, the court notes that the ALJ may recontact a medical source for clarification, if such clarification is needed to make the disability determination.  <u>See</u> 20 C.F.R. § 416.920b(b)(2)(i).

Because the ALJ did not properly evaluate the opinion evidence and evidence of absenteeism, substantial evidence does not support his decision. See Kangas v. Bowen, 823 F.2d 775, 778 (3d Cir. 1987) ("Because the decision of the ALJ and the Secretary failed to evaluate the effect of Kangas' frequent hospitalizations on his ability to perform any work on a regular, continuing or sustained basis, a critical factor, we conclude that the Secretary's finding that Kangas is able to engage in substantial gainful activity must be reconsidered."). See also Hause v. Saul, 2019 WL 5549525, at *10 (M.D. Pa. Aug. 29, 2019), Report and Recommendation adopted, 2019 WL 5550013 (M.D. Pa. Oct. 25, 2019) (remanding case for further consideration because the ALJ did not address the effect of the plaintiff's treatment on his ability to maintain employment, even though the VE explicitly stated that "'nobody would hire . . . or continue with' an individual who was absent from work on such a frequent basis"); Todd v. Berryhill, 2019 WL 1995494, at *2 (D. Del. May 6, 2019) (remanding case for further consideration because the ALJ's decision did not address the evidence of the plaintiff's frequent disability-related absences or the VE's testimony on the impact of such absences); Ashe v. Berryhill, 2019 WL 1430243, at *11 (D. Del. Mar. 29, 2019) (finding that the ALJ's failure to consider evidence of work-preclusive absenteeism "render[ed] meaningful judicial review of his determination impossible" and remanding for additional proceedings on the issue). Accordingly, the case will be remanded for further proceedings.

The court is mindful that this court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). This court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. Monsour Med. Ctr., 806 F.2d at 1190-91. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2012) ("Courts are

not permitted to re-weigh the evidence or impose their own factual determinations."); Burns, 312 F.3d at 118 ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder."). See also Cortes v. Comm'r of Soc. Sec., 255 F. App'x 646, 653 (3d Cir. 2007) (not precedential) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (quoting S.E.C. v. Chenery Corp., 318 U.S. 80, 87 (1943)); Clinkscales o/b/o T.S. v. Colvin, 232 F. Supp. 3d 725, 735-36 (E.D. Pa. 2017) (same).

If the ALJ again determines that plaintiff retains the RFC to perform a range of sedentary work, he must provide an adequate basis for that determination. Upon remand, the Commissioner may well reach the same conclusion; however, in the absence of sufficient indication that the Commissioner considered all of the evidence in the case and applied the correct legal standards, this court cannot satisfy its obligation to determine whether substantial evidence supports the Commissioner's decision. See Terwilliger v. Chater, 945 F. Supp. 836, 844 (E.D. Pa. 1996) (remanding case in the absence of sufficient indication that the Commissioner considered all of the evidence).[9]

---

[9]     Plaintiff requests that the court award benefits rather than remand for further proceedings. See Pl.'s Br. at 15. A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984). See also 42 U.S.C. § 405(g) (sentence four). In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting Saldana v. Weinberger, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." Podedworny, 745 F.2d at 221-22 (citations omitted). See also Gilliland v. Heckler, 786 F.2d 178, 184-85 (3d Cir. 1986) (citations omitted) (decision to direct the award of benefits should be made only when administrative record has been fully developed and when substantial evidence on the record as a

### C.    Evidence of Mental Impairments

Plaintiff also argues that the ALJ rejected or ignored all of the mental health opinion evidence and failed to include many of the specific limitations resulting from bipolar disorder, anxiety, and depression in the RFC finding.  (Pl.'s Br. at 16-24; Pl.'s Reply at 2-5.)  As discussed <u>supra</u>, the ALJ failed to consider all of the relevant evidence pertaining to the effects of HS on plaintiff's ability to work.  Such failure impacted, or may impact, the ALJ's consideration of the evidence pertaining to plaintiff's mental impairments.  Given the court's recommendation that the case be remanded, the court will not address this claim in detail.  A remand may produce different results on plaintiff's application, making discussion of this claim moot.  <u>See</u> <u>Steininger v. Barnhart</u>, 2005 WL 2077375, at *4 (E.D. Pa. Aug. 24, 2005) (concluding that the ALJ's hypothetical was deficient and the vocational expert's answer to it does not constitute substantial evidence for the ALJ's decision and declining to address plaintiff's other arguments for remand, "as the ALJ's findings may be revised in any decision issued following the new hearing").  <u>See also</u> <u>LaSalle v. Comm'r of Soc. Sec.</u>, 2011 WL 1456166, at *7 (W.D. Pa. Apr. 14, 2011) (remanding for the ALJ's failure to consider and analyze all relevant medical evidence regarding plaintiff's mental impairments and declining to examine plaintiff's additional claims because a "remand may produce different results on these claims, making discussion of them moot"); <u>Nieves v. Astrue</u>, 2010 WL 629831, at *7 (E.D. Pa. Feb. 19, 2010) (same); <u>Watson v. Astrue</u>, 2009 WL 678717, at *6 (E.D. Pa. Mar. 13, 2009) (declining to address plaintiff's remaining claims "until the basis for the ALJ's ruling is clarified through remand").  Nonetheless, the court notes that upon remand, if the ALJ again determines

---

whole indicates claimant is disabled and entitled to benefits).  Here, it is unclear whether the record has been fully developed.  As such, the case will be remanded for further development.

that plaintiff retains the RFC to perform a limited range of sedentary work, he must provide an adequate basis for his determination.

**D.      Motion to Stay**

Defendant filed a Motion to Stay (Doc. 15) (the "Motion"), requesting that the case be stayed pending resolution by the Third Circuit of the consolidated appeal of <u>Bizarre</u>, <u>Cirko</u>, and other cases that present the Appointments Clause challenge.  Defendant contends that the pending appeals raise the same legal issue presented in this case with respect to that issue. <u>See</u> Mot. at 4.  Plaintiff objects to the Motion.  (Doc. 16.)

"In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." <u>Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO</u>, 544 F.2d 1207, 1215 (3d Cir. 1976) (citing <u>Am. Life Ins. Co. v. Stewart</u>, 300 U.S. 203, 215 (1937)).  The Supreme Court has explained that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 254-55 (1936).

Therefore, when deciding a motion to stay proceedings pending the resolution of another action in federal court, the court must consider "whether the proposed stay would prejudice the non-moving party, whether the proponent of the stay would suffer a hardship or inequity if forced to proceed and whether granting the stay would further the interest of judicial economy." <u>Airgas, Inc. v. Cravath, Swaine & Moore LLP</u>, 2010 WL 624955, at *3 (E.D. Pa.

Feb. 22, 2010) (citing <u>Landis</u>, 299 U.S.at 254-55).[10]  The Supreme Court has made clear, however, that in deciding whether to stay a suit pending the outcome of another suit, the party moving for a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to [someone] else.  Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."  <u>Landis</u>, 299 U.S. at 555.  <u>See also</u> <u>CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.</u>, 381 F.3d 131, 139 (3d Cir. 2004) (the party seeking the stay "must state a clear countervailing interest to abridge a party's right to litigate"); <u>Gold v. Johns-Manville Sales Corp.</u>, 723 F.2d 1068, 1075-76 (3d Cir. 1983) ("It is well settled that before a stay may be issued, the [party seeking the stay] must demonstrate a clear case of hardship or inequity, if there is even a fair possibility that the stay would work damage on another party.  In these cases, the clear damage to the [non-moving parties] is the hardship of being forced to wait for an indefinite and . . . a lengthy time before their causes are heard.") (internal quotations and citations omitted).

---

[10]     "Although the Third Circuit has not endorsed a definitive formulation of factors to consider, courts in this Circuit engage in a balancing analysis to determine if a stay is appropriate."  <u>Razak v. Uber Techs., Inc.</u>, 2016 WL 3960556, at *3 (E.D. Pa. July 21, 2016).  These factors have been articulated in various terms.  <u>See, e.g.</u>, <u>Brandywine Vill. Assocs. v. Carlino E. Brandywine, L.P.</u>, 2018 WL 3752876, at *3 (E.D. Pa. Aug. 8, 2018) ("Applying <u>Landis</u>, this Court considers four factors before granting a stay: (1) the length of the requested stay; (2) the hardship that the movant would face if the stay was not granted; (3) the injury that a stay would inflict on the non-movant; and (4) whether granting a stay would streamline the proceedings by simplifying issues and promoting judicial economy.") (internal quotations omitted), <u>appeal</u> <u>filed</u>, No. 18-2874 (3d Cir. Aug. 23, 2018); <u>City of New Castle v. Purdue Pharma L.P.</u>, 2018 WL 3438841, at *2 (E.D. Pa. July 16, 2018) ("In order to decide a motion to stay proceedings pending the resolution of another action in federal court, courts have considered the following three factors: '(1) the promotion of judicial economy; (2) the balance of harm to the parties; and (3) the duration of the requested stay.'") (quoting <u>Cirulli v. Bausch & Lomb, Inc.</u>, 2009 WL 545572, at *2 (E.D. Pa. Mar. 4, 2009)).

Defendant avers that the factors weigh in favor of the requested stay. First, defendant notes that the appeals in <u>Bizarre</u> and <u>Cirko</u> are ripe for decision. (Mot. at 4.) Second, defendant avers that the Commissioner would face hardship if the stay were not granted in that it would continue to utilize resources in objecting to and filing additional appeals in unfavorable cases, and in responding to objections and appeals in favorable cases while the <u>Bizarre</u> and <u>Cirko</u> appeals are pending. <u>Id.</u> Third, defendant asserts that there is no possibility of prejudicial delay, because even if the Appointments Clause issue were decided in plaintiff's favor, defendant would likely appeal. <u>Id.</u> at 5. Defendant further avers that the court must decide the Appointments Clause issue in order to determine whether the case should be remanded to a new ALJ. <u>Id.</u> Fourth, defendant asserts that granting the stay would streamline the proceedings by simplifying issues and promoting judicial economy. <u>Id.</u>

The court finds these arguments unpersuasive. A stay would result in prejudicial delay to plaintiff, who initially filed her application for SSI over four years ago, on October 30, 2015. Although the Third Circuit heard oral argument on the consolidated appeal on the Appointments Clause challenge on November 13, 2019, a stay nonetheless would at a minimum require plaintiff to wait until the Third Circuit issues its opinion and this court renders a decision. Additionally, defendant contends that remanded cases "generally go to the same ALJ who initially heard the case, unless the case had already been remanded once or other special circumstances applied." <u>Id.</u> at 5 (citing HALLEX I-2-1-55(D)). However, defendant does not assert that the present case <u>cannot</u> be remanded to a different ALJ, and has not demonstrated that such directive would create a clear case of hardship.[11] <u>See id.</u> at 4-5. Moreover, it is unclear to

---

[11]     On July 16, 2018, the Commissioner ratified the appointment of Social Security ALJs and Appeals Council administrative appeals judges, and approved their appointments as her own in order to address any Appointments Clause questions involving SSA claims. <u>See</u> SSR 19-1p,

this court how granting the motion to stay will promote judicial economy as defendant asserts, given the backlog of cases that inevitably results.

While defendant argues that the four factors weigh in favor of defendant's requested stay, defendant has not demonstrated a clear case of hardship or inequity. "The proponent of a stay bears the burden of establishing its need." Richardson v. Verde Energy USA, Inc., 2016 WL 4478839, at *2 (E.D. Pa. Aug. 25, 2016) (quoting Clinton v. Jones, 520 U.S. 681, 708 (1997)). The court, therefore, will deny defendant's motion to stay these proceedings pending resolution of the appeals in Cirko and Bizarre and directs that the case be remanded to a different ALJ on the substantive basis set forth above.

## V.     CONCLUSION

After a careful and thorough review of all of the evidence in the record, and for the reasons set forth above, this court finds that the ALJ's findings are not supported by substantial evidence. Accordingly, plaintiff's Request for Review will be granted to the extent that the matter is remanded for further proceedings consistent with this opinion. In addition, defendant's Motion to Stay will be denied.

An appropriate Order accompanies this opinion.

BY THE COURT:


___/s/ Thomas J. Rueter_____
THOMAS J. RUETER
United States Magistrate Judge

2019 WL 1324866 (S.S.A. Mar. 15, 2019) (citing Social Security Emergency Message (EM) 18003 REV 2, § B (available at: https://secure.ssa.gov/apps10/reference.nsf/links/08062018021025PM)).